## ELLIOTT W. ELY *vs.* JAMES F. BUGBEE.

Second Judicial District, Norwich, April Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The State has the right, in the exercise of its police power, to seize implements used in catching fish in violation of law, and to condemn them to sale or destruction by judicial process.

If the statute authorizing such seizure fixes no limit of time after the seizure for the institution of condemnation proceedings, they must be instituted within a reasonable time.

A delay of fourteen days is not so unreasonable as to make the officer who made the seizure a trespasser *ab initio* as matter of law; especially where the owner of the property had in the meantime been arrested and convicted of the unlawful fishing for which the property was seized, and had taken an appeal which was still pending, so that the institution of a separate condemnation proceeding within

Ely *v.* Bugbee.

the fourteen days would probably have involved two trials and two appeals on practically the same issue. Under such circumstances it was not necessarily unreasonable for the officer to await the result of the criminal prosecution before instituting condemnation proceedings also.

A court will not impute to the General Assembly an unexpressed intention to confer an unconstitutional power.

Where a statute authorizes the seizure of property used in violation of law, with a view to its condemnation, the fact that the statute does not expressly require a warrant to be procured before the seizure, nor confine the right of seizure to the very time when the property was being unlawfully used, does not render the statute invalid; since the implied authority to seize without warrant is necessarily limited to such seizures as are permissible under the constitutional guarantees.

A statute may empower an officer to seize property without a warrant at the very time when it is being used in violation of law, or on the speedy information of others.

A seizure of property without a warrant on the day after its illegal use, in connection with the arrest of the owner for so using it, is not necessarily unreasonable or unlawful.

The lawful seizure of property as the first step in condemnation proceedings by a court of competent jurisdiction is of itself sufficient legal notice to require the owner to appear and defend in such proceedings.

Inasmuch as § 3110 of the General Statutes requires the order of condemnation to be made "in open court" upon a complaint against the owner, or against the person using or in charge of the property if the owner is not known, and authorizes an appeal by any party aggrieved by the judgment, it plainly contemplates the giving of such notice and opportunity to be heard as due process of law requires, and is therefore constitutional and valid.

Argued April 25th—decided June 27th, 1916.

ACTION of replevin for the possession of a motor-boat and fishing net which the defendant claimed to hold as a fish and game warden for the purpose of having them condemned or forfeited pursuant to the provisions of § 3110 of the General Statutes, brought to and tried by the Court of Common Pleas in New London County, *Waller, J.*, upon demurrer to the answer; the court sustained the demurrer, and upon the refusal of the defendant to plead further rendered judgment for the

plaintiff for $75 damages, from which the defendant appealed. *Error and cause remanded.*

This action of replevin was brought to recover a motor-boat, its furniture and equipment, together with eighty rods of gill net then in the possession of James F. Bugbee. In his answer the defendant avowed the taking, and alleged that on May 15th, 1914, the plaintiff was arrested on a warrant issued by a justice of the peace in the town of Lyme on the complaint of a Commissioner of Fisheries and Game for the State of Connecticut charging the plaintiff with a violation of chapter 57 of the Public Acts of 1911 (being a law regulating the taking of shad in tributaries of the Connecticut River) on the 14th day of May, 1914; that on the 22d day of May, 1914, the plaintiff was found guilty of the offense charged against him and fined $50 and costs, from which judgment the plaintiff appealed to the Criminal Court of Common Pleas for the county of New London, where the case was then pending. The answer further alleged that all the goods specified in the complaint were owned and used by the plaintiff in violation of law and in the commission of the same offense of which he was convicted in the justice's court. It then justifies the taking on the ground that the defendant was a duly appointed Fish and Game Warden for the county of New London, and that the property in question was seized and held in custody by him for the purpose of condemnation or forfeiture, as provided by § 3110 of the General Statutes.

To this answer the plaintiff demurred, for reasons which are sufficiently stated in the opinion.

*Clayton B. Smith* and *Charles L. Stewart,* for the appellant (defendant).

*Morris Lubchansky,* with whom was *Philip Z. Hankey,* for the appellee (plaintiff).

BEACH, J.  The State has an undoubted right, in the
exercise of its police power, to seize implements used
in taking or catching fish in violation of law, with a
view to subjecting them to judicial condemnation and
to sale or destruction by process of law.  *Lawton* v.
*Steele,* 152 U. S. 133, 14 Sup. Ct. 499.  That is not
denied, but the plaintiff claims that the possession of the
defendant fish warden in this case is wrongful for the
following reasons, which we take up in their order.
First, because the fish warden took no steps to institute
condemnation proceedings prior to the commencement
of this replevin suit on May 29th, 1914, fourteen days
after the original seizure; second, because the statute,
§ 3110, is unconstitutional in that it permits a seizure
without warrant, although the property is not being
used in violation of law at the very time of the seizure;
and third, because the statute is unconstitutional in that
it makes no provision for notice to the owner, or for
opportunity to be heard in the condemnation pro-
ceedings.

The plaintiff's first claim is that although no time is
fixed by the statute within which the implements seized
shall be brought before a justice of the peace, a warden
is required to act with diligence appropriate to the
character of the proceedings, and that fourteen days'
delay is such an unreasonable delay as constitutes a
failure to comply with the requirements of the statute,
by reason of which failure the warden became a tres-
passer *ab initio.*

We do not assent to this conclusion.  The legislature
may fix any time it pleases within which articles seized
for a violation of law shall be brought before a court
for condemnation, subject to the limitation that the
delay is not in itself a deprivation of property without
due process of law.  If it fixes no time, the common law
supplies the requirement that the officer shall act within

a reasonable time. What is a reasonable time in any case depends on the circumstances of that case, and on the consequences of the lapse of time complained of. In this case the question is whether or not, upon the facts alleged in the answer, whose allegations are assumed to be true by the demurrer, the delay was so unreasonably prolonged as to justify the conclusion that it was unreasonable as a matter of law. The answer alleges that upon the same day on which the property was seized, May 15th, 1914, the plaintiff himself was arrested; that both the seizure and the arrest were for the same alleged offense, namely, the unlawful taking of shad, by the use of the very property described in the complaint, on May 14th; that on May 22d the plaintiff was convicted of so using this property and fined $50; and that he then appealed to the Court of Common Pleas for New London county, where the cause was pending and undetermined when this writ of replevin was brought on May 29th.

It thus appears that the question whether this property was subject to condemnation because used in violation of law on May 14th, was necessarily involved in the prosecution of the plaintiff before the justice on the charge of having so used it on that day; and while that proceeding was pending and in process of orderly judicial determination, it was not necessarily unreasonable for the defendant to await the result, before instituting condemnation proceedings also. The plaintiff's appeal vacated the judgment of the justice, and its effect was that the case then stood before the Court of Common Pleas "precisely as it would have done if originally brought there." *State* v. *Hartwick*, 49 Conn. 101, 103.

Under these circumstances it cannot be said that the failure to institute condemnation proceedings before May 29th, necessarily delayed for an unreasonable

time the final determination of the question whether this property is subject to condemnation, or that the plaintiff, prior to May 29th, has necessarily been unreasonably deprived of the use of his property because of the failure to institute condemnation proceedings before that day. It is rather to be supposed that the institution of a separate condemnation proceeding before that date, would have resulted in two separate judgments adverse to the plaintiff, and, unless he was willing to abandon the property, in two separate appeals involving substantially, if not identically, the same questions of fact and law. We think the trial court erred in sustaining the demurrer on the ground that the failure of the defendant to institute condemnation proceedings before May 29th was in point of law such an unreasonable delay as to convert the defendant into a trespasser *ab initio.*

The next claim is that the statute is unconstitutional in so far as it purports to authorize a seizure, without warrant, of articles harmless in themselves which are not being used unlawfully at the very time of the seizure.

The plaintiff assumes that the statute purports to confer an unlimited authority to seize without warrant, and then points to the extreme possible consequences of exercising such authority as proof that the statute is unconstitutional. On the contrary, the statute does not expressly purport to confer any authority at all to seize without warrant. It authorizes such seizures by implication only, because it does not expressly require a warrant as a condition precedent to seizure; and since it is impossible to attribute to the General Assembly an unexpressed intention to confer an unconstitutional power, the implied authority to seize without warrant is necessarily limited to such seizures without warrant as are permissible under the constitutional guarantees.

These considerations dispose of the broad claim that the statute is, on this ground, unconstitutional; and the only question which remains is whether the particular seizure under which the defendant justifies was lawful under the Constitution. If so, it was lawful under the implied authority of the statute; otherwise not.

This property was seized for a violation of the fish laws on the day following the commission of the offense, and at or about the same time that the plaintiff himself was arrested for the same offense, upon a warrant issued according to law. There is nothing to indicate that the seizure was accompanied by any unlawful violation of the plaintiff's rights of property or privacy, or that its purpose or effect was to deprive the plaintiff of the protection of any constitutional guarantee in the criminal proceedings commenced by his arrest. For the purposes of testing the plaintiff's demurrer to the defendant's answer, it must be assumed that the property was seized for the sole purpose of bringing it into court with a view to its condemnation by judicial proceedings according to law; that it was liable to seizure, and that in point of fact it was a condemnation under the statute, and was rightfully seized except for the alleged wrongful omission of a warrant. It must be conceded that property may lawfully be seized without warrant if taken by the officer at the very time when it is being used in violation of the fish and game laws, or upon the speedy information of others; and without attempting any general definition of the powers of fish and game wardens under other statutes, we think that a seizure without warrant of this property on the day after its use, in connection with the arrest of the owner for the commission of the offense of using it in violation of the fish laws, is not an unreasonable seizure when the fact is admitted that the property was so used.

The final objection, that the statute authorizes condemnation proceedings without notice to the owner or opportunity to be heard, is not well founded on the face of the statute. The justice of the peace is required to order the destruction or sale of the property, "in open court"; and the statute then goes on to provide that the person using, or in charge of, the offending property may be considered the owner thereof, "in any complaint commenced to procure its forfeiture or condemnation, when the owner is unknown to the informer or prosecutor"; and, further, to provide for appeal to the Court of Common Pleas or the Superior Court, and for writs of error to the Superior Court. These provisions, when coupled with the necessary presumption that an order passed in open court shall be passed in the ordinary course of judicial procedure, plainly contemplate such notice and opportunity to be heard as due process of law requires. Indeed, they go further than the bare necessities of the case, for the lawful seizure of the property as the first step in proceedings for its condemnation by a court of competent jurisdiction is of itself sufficient legal notice to require the owner to appear and defend it in such proceedings. Yet this statute contemplates notice by service of process also, for it assumes that the judicial proceedings for condemnation, after the seizure, are to be commenced by a complaint against the owner or against the person using or in charge of the property when the owner is unknown; moreover, it authorizes an appeal in favor of any parties aggrieved by the judgment, the effect of which is to vacate the judgment of the justice's court, and to afford an opportunity for a trial *de novo* in the appellate court. The owner is thus abundantly protected by the terms of the statute against an *ex parte* condemnation of his property without notice or opportunity to be heard.

There is error and the cause is remanded to the Court of Common Pleas for New London County with direction to overrule the demurrer to the defendant's answer.

In this opinion the other judges concurred.