[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thomas Scranton, appeals pursuant to General Statutes Section 4-183 from a decision of the defendant, State of Connecticut Department of Motor Vehicles, suspending his driver's license for a period of six months pursuant to Connecticut's "implied consent" law, General Statutes Section 14-227b.
The police report (Record Item 1), which was admitted without objection at the Department hearing, reveals the following facts. On February 18, 1990, at approximately 1:40 a.m., Trooper Morales of the Connecticut State Police observed the plaintiff's vehicle parked on an uphill slope on the grass on the median divider of Interstate 84 eastbound approximately two miles east of Exit 71 in Willington. The vehicle's motor was running, its gear was in the drive position and its lights were on. The plaintiff was sleeping in the driver's seat. Trooper Morales attempted to awaken the plaintiff by knocking on the window, but was unsuccessful. Trooper Morales opened the unlocked door of the vehicle, noticed that it was in the drive position and immediately shifted it into park and removed the keys from the ignition. Trooper Morales noticed a strong odor of an alcoholic beverage on the plaintiff's breath and, when the plaintiff awakened, the trooper observed that his eyes were bloodshot and glassy. The plaintiff appeared confused and his speech was slurred. Upon exiting the vehicle, the plaintiff fell to one knee and then staggered to the front of the police cruiser. The plaintiff produced his driver's license upon a second request from Trooper Morales, after first presenting him with a student I.D. card instead of the license.
Trooper Morales asked the plaintiff to perform two sobriety tests, the horizontal gaze nystagmus test and the alphabet test, neither of which the plaintiff was able to perform. The plaintiff was verbally advised of his rights and transported to Troop C in Stafford.
Upon arrival at Troop C, the plaintiff was read a notice of rights, which he stated he understood. The plaintiff's wife was contacted and she notified his attorney, who advised the plaintiff to submit to testing. The plaintiff submitted CT Page 8864 to two breath tests, which indicated a blood alcohol content of .171 and .162. The plaintiff was then released.
By notice dated March 2, 1990, the plaintiff was apprised that his driver's license would be suspended for ninety days, effective March 25, 1990, for failing a chemical alcohol test following his arrest, pursuant to the provisions of General Statutes Section 14-227b, as amended by Conn. Pub. Acts No. 89-314. (Record Item 3). The notice also advised the plaintiff that he was entitled to a hearing prior to the effective date of the suspension.
On March 20, 1990, a hearing was held before Attorney Charles Greenwald, a hearing officer. (Record Item 5). The plaintiff was represented by counsel. At the hearing the plaintiff stated that he did not recall any field sobriety tests being administered, nor did he recall being warned of his constitutional rights. (Record Item 5, pp. 2-3). The plaintiff also claimed that when the police officer approached the vehicle, the plaintiff was not operating the vehicle; it was off on the side of the road and it was stopped. (Record Item 5, p. 4). The plaintiff claimed that the engine was not running and the keys were in the ignition but had been turned off. (Record Item, 5 p. 4).
By decision dated March 21, 1990, the hearing officer found in the affirmative the four issues enumerated in General Statutes Section 14-227b(f) and affirmed the suspension of the plaintiff's license for six months. (Record Item 6).
The plaintiff has timely appealed. In this appeal, the plaintiff does not challenge the four factual findings of the hearing officer. Instead, the plaintiff challenges the constitutionality of Connecticut's implied consent law on two grounds: (1) it violates one's right to due process pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution and Article First, Sections 7 and 8 of the Connecticut Constitution by "ignoring the established and well founded judicial mandate that the fruits of an illegal automobile stop are to be suppressed and are inadmissible against a person charged with a crime" (Plaintiff's brief, p. 3); and (2) it violates the separation of powers provision of Article Second of the Connecticut Constitution. The plaintiff's application for a stay of the agency's decision to suspend his license pending the court's decision on this appeal was granted on April 9, 1990.
DISCUSSION CT Page 8865
I. AGGRIEVEMENT AND STANDARD OF REVIEW
Judicial review of the Department's action is governed by the Uniform Administrative Procedure Act, General Statutes Sec. 4-166 through 4-189 (rev'd to 1991). Buckley v. Muzio,200 Conn. 1, 3 (1986). Only those persons aggrieved by a final decision of the agency may appeal. General Statutes Section 4-183(a). "One whose license is suspended pursuant to Conn. Gen. Stat. Sec. 14-227b `is an aggrieved person within the meaning of General Statutes Sec. 4-183(a) in that a specific personal and legal interest, his license to drive, has been adversely affected.'" Lee v. DelPonte,2 Conn. L. Rptr. 480, 481 (September 20, 1991, Zoarski, J.), quoting Tarascio v. Muzio, 40 Conn. Sup. 505, 507 (1986); see Bakelaar v. West Haven, 193 Conn. 59, 65 (1984). The court finds that the plaintiff is aggrieved.
Pursuant to General Statutes Sec. 14-227b(f), the hearing before the Commissioner of Motor Vehicles or a hearing officer shall be limited to a determination of four issues:
 (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one percent or more of alcohol, by weight, and (4) was such person operating the motor vehicle.
In reviewing the decision of the hearing officer regarding the above issues,
[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that the substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of CT Page 8866 constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
General Statutes Sec. 4-183(j); see Lee,2 Conn. L. Rptr. at 4. The plaintiff has the burden of proving that the hearing officer, acting on the evidence before him, acted contrary to law and in abuse of his discretion. Dorman v. DelPonte,41 Conn. Sup. 437, 441 (1990); see Demma v. Commissioner of Motor Vehicles, 165 Conn. 15, 16-17 (1973).
II. CONSTITUTIONALITY
"One who challenges the constitutionality of a statute bears the heavy burden of overcoming the presumption of its constitutional validity and of establishing the statute's invalidity beyond a reasonable doubt." Ecker v. West Hartford, 205 Conn. 219, 237 (1987). A party who challenges the constitutionality of a statute must prove that the statute has adversely affected a protected interest under the facts of his particular case and not merely under some hypothetical set of facts not proven to exist. State v. Zach, 198 Conn. 168, 176 (1985); Payne v. Fairfield Hills Hospital, 215 Conn. 675, 684-85 (1990).
A. UNREASONABLE SEARCH AND SEIZURE CLAIM
The plaintiff argues that Section 14-227b impermissibly limits the Commissioner's scope of inquiry. The plaintiff claims that subsection (f)(1), which requires the Commissioner to make a determination of whether the police officer had probable cause to arrest the driver for operating under the influence of alcohol or drugs, "falls short of that which is necessary to ensure that the plaintiff is accorded his full panoply of rights that Connecticut residents have come to expect as their due." (Plaintiff's Brief, pp. 5-6). The plaintiff contends that, because the hearing officer's determination is limited to the four issues enumerated in Section 14-227b(f), the statute denies an individual the right to challenge the validity of the initial stop and exclude the unlawfully obtained evidence. The plaintiff claims that "the issue . . . should not be limited to whether the police had probable cause to make an arrest, but should include whether the police had a reasonable and articulable CT Page 8867 suspicion that criminal activity was afoot." (Plaintiff's brief, p. 6). The plaintiff argues that at the hearing, the Commissioner takes no notice of whether or not there was a reasonable or articulable suspicion that criminal activity was afoot when the police officer made the initial detention. The plaintiff contends that Connecticut courts in recent years have determined that in certain instances, Connecticut residents are to be afforded protections under our own constitution that go beyond those provided by the federal constitution, and that one of those instances involves protection against unreasonable searches and seizures. The plaintiff claims that General Statutes Sec. 14-227b, as amended by Conn. Pub. Acts No. 89-314, contravenes that thinking by providing lesser protection.
The defendant argues that there is nothing in the plain language of Section 14-227b(f) which denies a party the right to object to the admissibility of evidence concerning the four enumerated issues. The defendant argues that the plaintiff, however, never objected to the report being admitted into evidence at the administrative hearing. The defendant contends that the suppression issue is therefore not properly before this court.
The defendant further contends that, even if the plaintiff's failure to object to the police report does not prevent judicial review of his unreasonable search and seizure claim, there nevertheless is no merit to the plaintiff's assertion that the exclusionary rule applies to an administrative license suspension proceeding. The defendant finally asserts that the plaintiff was not subjected to an unreasonable search and seizure.
Although in the conclusion of his brief the plaintiff states that "[t]he plaintiff believes that his detention was unlawful," the plaintiff never objected at the hearing to the introduction of the police report, nor did he explain at the hearing, in his complaint, in his brief or at oral argument before this court why or how in his particular case his detention was unlawful. The plaintiff instead offers two hypothetical situations as examples of Section 14-227b's impermissible limitation on the Commissioner's scope of inquiry. These examples focus on the disparate results of a criminal proceeding where unlawfully seized evidence is excluded and charges are dropped for lack of evidence, and an administrative license suspension hearing which results in a license suspension where the same evidence is admitted "because the Commissioner's scope of inquiry [excludes] . . .Fourth Amendment concerns." (Plaintiff's brief, p. 10). CT Page 8868
To the extent that the plaintiff is making a facial or per se challenge to the constitutionality of Section 14-227b, a declaratory judgment action is the more appropriate procedure to utilize. "The declaratory judgment procedure in Connecticut . . . is peculiarly well adapted to the judicial determination of controversies concerning constitutional rights and. . .the constitutionality of state legislative or executive action." Horton v. Meskill, 172 Conn. 615, 626
(1977). "The validity or constitutionality of an ordinance or regulation should be challenged in a declaratory judgment action." Cristofaro v. Planning and Zoning Commission,11 Conn. App. 260, 262, cert. denied, 204 Conn. 810 (1987); see BCBS Goshen Realty Inc. v. Planning and Zoning Commission,22 Conn. App. 407, 409-10 (1990); Aaron v. Conservation Commission, 178 Conn. 173, 178 (1979).
To the extent that plaintiff challenges the constitutionality of the statute as applied in this case, the plaintiff has not met his burden of proof. The facts of this case presented by both parties in their briefs as well as the police report, all reflect that the plaintiff's vehicle was already stopped at the side of the highway at approximately 1:40 a.m. when Trooper Morales approached to investigate. The police report reflects that Trooper Morales knocked on the window to wake the plaintiff, and that, when he was unsuccessful, he opened the unlocked door, noticed a strong odor of an alcoholic beverage on the plaintiff's breath as he attempted to wake him, and observed other indications that the plaintiff had been drinking.
In the absence of some indication by the plaintiff as to what aspect of this scenario constituted a violation of his due process rights, this court is unable, from the information available in the record, to see how the plaintiff's constitutional rights were in any way violated and therefore how Section 14-227b is in any way unconstitutional as applied to the facts of this particular case. The plaintiff has not sustained his burden of proving that Section 14-227b is "unconstitutional beyond a reasonable doubt" under the facts of his particular case. See Ecker,205 Conn. at 237; Zach, 198 Conn. at 176.
The plaintiff fails to consider the fact that the license suspension proceeding pursuant to General Statutes Section 14-227b is an administrative proceeding, not a criminal trial.
 Although sections 14-227a and 14-227b are interrelated, they give rise to separate and distinct proceedings, the former dealing with CT Page 8869 criminal proceedings subsequent to arrest and the other dealing with civil administrative procedures concerning license suspension for refusal of testing subject to judicial review only upon appeal. State v. Towry, 26 Conn. Sup. 35, 40, 210 A.2d 455 (1965); see also State v. Hanusiak, 4 Conn. Cir. Ct. 34, 42, 255 A.2d 208 (1966). A person who is faced with the choice of whether to submit to chemical testing is subject only to the non-criminal sanction of license suspension and is not `a person accused of a crime'. . . .
Clark v. Muzio, 40 Conn. Sup. 512, 518 (1986), aff'd,14 Conn. App. 212 (1988), cert. denied, 208 Conn. 809 (1988); see Buckley, 200 Conn. at 8; see also Volck v. Muzio,204 Conn. 507, 514-16 (1987). "The determination of the facts [at the administrative hearing] by the hearing officer shall be independent of the determination of the same or similar facts in the adjudication of the criminal charges arising out of the person's arrest for the enumerated offense." Conn. Agency Regs. Sec. 14-227b-20(b).
The Connecticut courts have not addressed the issue raised in this appeal as to the applicability of the exclusionary rule to administrative license suspension proceedings. There appears to be a split of authority among state courts as to whether illegally obtained evidence is admissible in civil proceedings. See Annot., 5 A.L.R.3d 670 (1966, as updated to 1991). The Connecticut Supreme Court in Payne v. Robinson stated that "[i]llegally obtained evidence is inadmissible in a criminal trial." 207 Conn. 565, 571
(1988), (emphasis added), citing Mapp v. Ohio, 367 U.S. 643,81 S.Ct. 1684, 6 L.Ed.2d 1081, reh. denied, 368 U.S. 871,82 S.Ct. 23, 7 L.Ed.2d 72 (1961). In Payne, the court held that the exclusionary rule does not apply to a probation revocation hearing where the police officer conducting the allegedly illegal search was unaware of the suspect's probationary status because the application of the rule would have only a marginal deterrent effect on unlawful police conduct. Payne, 207 Conn. at 570.
"The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim," instead, "the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of theFourth Amendment against unreasonable searches and seizures." Payne, 207 Conn. at 570, quoting U.S. v. Calandra, 414 U.S. 338,347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Application of the rule is thus appropriate in circumstances in which this purpose is likely to be furthered. Payne, 207 CT Page 8870 Conn. at 570; Calandra, 414 U.S. at 348.
Weighing the potential injury to the administrative license suspension process of Section 14-227b from the exclusion of relevant evidence against the potential benefits of the exclusionary rule as applied in this context, see Payne, 207 Conn. at 570-71; Calandra, 414 U.S. at 349; the exclusion of illegally obtained evidence in the administrative license suspension proceeding, as in the probation revocation hearing, "would not appreciably enhance the deterrent effect already created by the inadmissibility of the evidence at the [criminal] trial." Payne,207 Conn. at 571. However, the exclusion of such evidence in an administrative license suspension hearing under the implied consent law would thwart the purpose of that law, which is to protect the public in the use of the highways. 7A Am.Jur.2d, Automobiles Highway Safety, Sec. 112; see House Proc. vol. 32 pt. 1, p. 3986, (comment of Senator Maloney); State v. Hanusiak, 4 Conn. Cir. Ct. 34, 40-41 (App.Div. 1966).
Finally, while the Connecticut courts have not addressed this issue, in Commonwealth of Pennsylvania, Department of Transportation v. Wysocki, 535 A.2d 77 (Pa. 1987), the Pennsylvania Supreme Court addressed the issue raised by the plaintiff in this appeal. The court held that the illegality of the initial detention does not in and of itself preclude the suspension of operating privileges. Id. at 79. The court stated that,
 [w]here the results of the test are being used as evidence in a criminal trial, it is properly excluded in that proceeding if it is found to be the fruit of an illegal arrest. The basis for employing the exclusionary rule in Fourth Amendment
situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. . . . Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings.
Id.
For all of the reasons discussed above, the plaintiff has not sustained his burden of proving that the administrative license suspension procedure pursuant to the CT Page 8871 implied consent statute is unconstitutional because it fails to address one's right to be free from unreasonable searches and seizures.
B. SEPARATION OF POWERS CLAIM
The plaintiff argues that Section 14-227b is unconstitutional because it violates the separation of powers provision of Article Second, as amended, of the Connecticut Constitution. The plaintiff claims that Section 14-227b
impermissibly allows the Commissioner to determine whether a police officer had probable cause to arrest the person. The plaintiff contends that probable cause is a term of art associated with the state and federal constitutions and it has historically been handled by the judiciary because the essence of the inquiry concerns the interpretation of the state and federal constitutions. The plaintiff maintains that "the law is absolutely clear that administrative agencies, i.e., members of the executory branch, do not and cannot entertain constitutional issues." (Plaintiff's brief, p. 13). The plaintiff argues that Section 14-227b makes it impossible to avoid the constitutional question of whether or not probable cause existed to make the arrest, forcing the Commissioner to exercise powers that are purely judicial.
The defendant argues that the granting or suspension of a license or right to operate a motor vehicle is an administrative act resting in the power of the Commissioner of Motor Vehicles, reasonably exercised. The defendant contends that the Commissioner acts in a quasi-judicial capacity in imposing the administrative sanction of license suspension under the implied consent law. The defendant maintains that in making a determination of whether probable cause exists for the arrest of an operator within the context of the administrative proceeding, the Commissioner applies the legal standards formulated by the courts. the defendant argues that if the Commissioner misapplies the law, the court can rectify such an error through the judicial provided in General statutes Section 4-183. CT Page 8872
 The authority to suspend or revoke drivers' licenses is usually vested in administrative officers. Since a driver's license is generally considered a privilege and not a property or contact right, there is no denial of due process of law resulting from placing the power to suspend or revoke in an administrative officer. The licensee's right of review, as provided by law, is his sufficient protection that suspension or revocation powers will be reasonably and fairly administered.
7a Am.Jur.2d Automobiles and Highway Traffic, Sec. 113 "The granting or suspension of a license or right to operate a motor vehicle is an administrative act resting in the power of the commissioner [of motor vehicles], reasonably exercised." State v. Barber, 24 Conn. Sup. 346, 350
(Cir. Ct. App. Div. 1962). In a license suspension proceeding pursuant to the implied consent law, the Commissioner properly acts in a quasi-judicial capacity. Lee,2 Conn. L. Rptr. at 484; see Dan M. Creed, Inc. v. Tynan, 151 Conn. 677,678 (1964).
 A "quasi-judicial proceeding is one `which may constitutionally be exercised either by the courts or by an administrative tribunal. . ." Magnan v. Anaconda Industries, Inc., 37 Conn. Sup. 38, 44
(Super.Ct. 1980) (quoting Norwalk v. Connecticut Co., 88 Conn. 471, 478 (1914)). "Those administrative agencies which are `called upon to weigh evidence and to reach conclusions' have been defined as acting in a quasi-judicial capacity." Id. at 43 (citing Adam v. Connecticut Medical Examining Board, 137 Conn. 535, 537 (1951)). That CT Page 8873 definition "encompasses those . . . agencies that exercise `discretion in the application of legal principles to varying factual situations and requires notice and hearing.'" Id. (citation omitted).
Lee, 2 Conn. L. Rptr. at 284.
In determining whether probable cause exists to arrest an operator in order to make a finding pursuant to Section 14-227b(f)(1), the Commissioner applies the legal standards formulated by the courts:
 Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the person arrested had committed an offense.
Clark, 40 Conn. Sup. at 514; (citations omitted); see Morse v. DelPonte, 1 Conn. L. Rptr. 329, 330 (March 5, 1990, Kocay, J.). The decision of the Commissioner is subject to judicial review pursuant to General Statutes Section 4-183.
The plaintiff has cited no authority for his contention that a determination of probable cause is a constitutional issue which an administrative agency is prohibited from considering. The plaintiff has not met his burden of proving that General Statutes Section 14-227b is unconstitutional because it violates the separation of powers provision of the Connecticut Constitution.
CONCLUSION
The plaintiff's appeal is dismissed.
HON. ALLEN SMITH SUPERIOR COURT JUDGE